Moncure J.
delivered the opinion of the court:
• This is a supersedeas to a judgment in favor of tlie plaintiff on a special verdict, in an action of detinue brought by Eobert T. Norris’s adm’r against George Layne for a slave named Yina.
The most favorable view which can be taken of the case for the plaintiff, is to suppose that his intestate Eobert T. Norris was entitled to the slave in controversy in remainder at the death of his mother Mrs. Norris, to wit: on the 21st of June, 1839. Supposing him to have then become entitled to the possession of the slave, the only question is, whether he and his personal representative continued to be so entitled for sixteen years thereafter, and until the institution of the action, in July 1855?
At the death of Mrs. Norris, the defendant Layne, who had purchased her life estate in Franky, the mother of Yina, who was born after the purchase, was in possession of Yina, and has ever since remained in such possession. The action of the remainderman Eobert T. Norris then accrued, and not having been instituted for more than-five years thereafter, it would have' been barred by the *240 act of limitations, if it liad been pleaded. And wherever the act of limitations would be a bar to an action for property, it gives to the defendant such a title to the property as enables him'to maintain his defence under the general issue, and would even enable him to maintain an action for the property. 1 Rob. Pr. (new) 506, citing 3 H. & M. 57; 4 Id. 139; 4 Munf. 301; Id. 501; 5 Craneh 358; 11 Wheat. 371.
But it was contended by the counsel for Robert T. Norris’s adm’r, that Mrs. Norris, the life tenant, having died after the 1st day of March, to wit: on the 21st day of June 1839, her assignee Layne was entitled to the possession of Yina until the end of the year 1839, under sections 53 and 55, or one of them, of ch. 10é, 1 R. 0 , 1819, p. 388. And that Robert T. Norris having died before the end of the year, to wit: on the 21st of October 1839, and having no personal representative until within five years before the action was instituted, it would not have been barred by the act of limitations, and therefore the defendant did not acquire title to the property by his possession thereof.
The answer to this argument is, that the case falls under neither of the categories created by these two sections. The 53d section applies to slaves employed in making a crop; the 55th, to slaves let or hired to another. The slave in controversy was, at the death of Mrs. Norris, neither “employed in making a crop,” n'or “let or hired to another.”
It was further contended that a particular tenant who continues to hold the property after the expiration of the particular estate, if not regarded as a fiduciary in reference to the remainderman, will yet not be considered as holding adversely to him, at least until after demand made, or the lapse of a reasonable time for the delivery of the property; and therefore that the defendant did not hold the slave Yina adversely to Robert T. Norris *241 at the time of his death, which was only four months after that of his mother. Bo that, in that view, the action, having been brought within five years after the " ■qualification of a personal representative of Eobert T. Norris, was brought in due time.
There is no fiduciary relation between the particular tenant and remainderman after the termination of the particular estate. And if the particular tenant continues to hold and enjoy the property thereafter, he will be considered as holding it adversely to the remainderman unless it be shown affirmatively that he holds it by his authority or permission. He will not be considered as tenant at will or at sufferance of the remainderman, but is like any other person who wrongfully holds and enjoys the property of another. His case is very different from that of a lessee, holding over after the expiration of the lease; in which case, the law implies a tenancy from year to year, on the terms of the lease, as being consonant alike to the justice of the cuse and the presumed intention of the parties. In the case of a particular tenant holding over after the right of possession of the remainderman accrues, there is no foundation, in any prior contract of the parties, for such an implication.
Lastly it was contended that the possession of the defendant should have been expressly found in the special verdict to have been adverse to the title of the plaintiff, and cannot be inferred to have been so from the facts therein found.
Such adverse possession is, in effect, found in the special verdict. It expressly finds that the defendant “held uninterrupted possession of the slave in controversy from the date of her birth in 1835 until the institution of the suit,” which was in 1855 ; and it does not find that such possession was by authority or permission of the plaintiff or his intestate, nor any fact from which such authority or permission can, however remotely, be inferred. *242 According to the facts found, the law of the case is for the defendant; and certainly the court will not presume ' the existence of other facts not found which would make the law of the case otherwise. It will rather presume, in favor of the verdict, that all the material facts of the case were therein found. Possession is the indicium of title to personal property, and when found Toy a special verdict to be in a defendant, the law infers it to be adverse, in the absence of any finding to the contrary. Although if is an inflexible rule that the court upon a special verdict cannot infer other facts from those found, yet it is the province of the court to make all legal inferences from the facts found in the verdict. 1 Bob. Pr. (old) 373 and cases cited; 3 Munf. 1; 5 Leigh 615; 4 Id. 37; 11 Id. 281; 4 Gratt. 16. The cases relied on in the argument to show that the possession of the defendant must be found in the verdict to be adverse or will not be inferred by the court to be so, are not in conflict with the principle as above laid down. Williams v Snidow, 4 Leigh 14, and Purcell, &c. v. Wilson, 4 Gratt. 16, were referred to-. Both of these cases were writs of right, and according to the facts found in each, the possession of the defendant was clearly not adverse. In the former, an executory contract for the sale of land was rescinded by mutual consent of parties, and while the vendee remained in possession thereafter, without paying any rent and without pretence of title, the original vendor conveyed the land to the intermediate vendor, and the question was, whether the deed operated to pass the legal title to the land; in other words, whether such possession was adversary to the grantor; and the court held that it was not. The latter, was an action brought by one coparcener against another or the assignee of another, and the possession of the defendant was held not to be adverse, the verdict not having found an actual disseisin or ous *243 ter of the demandant nor facts which in law constitute such actual disseisin or ouster. See also Pownal v. Taylor, 10 Leigh 172, which admits of a similar explanation.
These cases depend on this principle; that a possession not adversary in its commencement will be presumed not to be adversary in its continuance, unless and until the presumption be repelled by proof that the party in possession claimed to hold adversely to the other party and with his knowledge. But the principle does not apply to this case. Here the possession of the defendant was adversary in its commencement; that is after the right of possession of the remainderman accrued. Hntil then the defendant held under his own title, and he never at any time held under the title of the remainderman.
The judgment of the Circuit court is reversed and judgment rendered on the special verdict for the defendant.
Judgment reversed, and entered for the defendant below.