Moncure J.
delivered the opinion of the court:
The appellant’s claim is founded on1 the assumption that his deed is entirely voluntary. H it was executed for a valuable consideration, in whole or in part, it is certainly valid and effectual, whether it be regarded as an executed, or a merely executory contract. The deed recites that it was executed for a valuable consideration received 'by the grantors, and is evidence of that fact against them, even in a court of equity; though not conclusive evidence, or an estoppel in that court. The deed also recites that it was executed “out of pure love and affection.” And the appellant in his answer denies that any valuable consideration was paid or intended to be paid, and avers that the conveyance was purely voluntary. The evidence tends to support the answer, though it may well be doubted whether both together are sufficient to outweigh the effect of the admission contained in the deed. However that may be, it will be conceded, for the purposes of this case, that the deed was entirely voluntary, and we will proceed to consider the question submitted by the appellant in his answer: Whether a merely voluntary deed, executed under such circumstances, and without any change of the possession of the property, is binding upon him?
The Code, ch. 116, § 1, p. 500, provides, that “no gift of a slave or of any goods and chattels shall be valid, unless by deed or will, or unless actual possession shall have come to and remained with the donee or some person claiming under him.” Under this provision such a *247 deed would be valid between tbe parties even without being recorded; though under the' act of 1819,1 B. O. ch. Ill, § 51, p. 432, which was in force when the gift in this case occurred, the deed as to slaves, was required to be recorded to make it valid even between the parties. The gift in this case, being by deed duly recorded, would certainly have been valid, though unaccompanied by a change of possession, evqn if the interest conveyed had been a present interest in possession; and a, fortiori if it had been a vested interest in remainder of the donor in his own right; in which case the interest would have been in its nature incapable of a change of possession. But the interest conveyed is the husband’s interest in his wife’s vested remainder, dependent on a life estate in slaves; and the question is, whether a voluntary conveyance of such an interest is valid, in the event which has occurred of the husband’s surviving both his wife and the tenant for life ?
It must be observed, that though the wife united with her husband in this case in signing the deed, it is Ms deed only and not her’s, as the law then in force provided no mode whereby a wife could convey an interest in personalty (except her separate estate); though the present law does provide such a mode. Code, ch. 121, § 4, p. 513; which mode however was not pursued in this case, even if it were governed by the present law.
The counsel for the aj>pellees contend that a wife’s vested remainder in personal estate is not a mere chose in action which the husband must reduce into possession to perfect his title thereto, but vests in him absolutely and immediately jure inariti. So that if the husband should die before the wife and before the determination of the particular estate, the remainder would belong to his personal representative.
If this were so, it would be conclusive of the case against the appellant; as the deed would be an exe *248 cuted gift of a vested remainder in slaves, which would! certainly be valid. But it is now too well settled to admit of question, that where a wife has a vested remainder in personal estate expectant on the death of a tenant for life, and both the wife and tenant for life outlive the husband, the wife is entitled, by right of survivor-ship, to the interest or remainder, not only against the representatives and general assignees of the husband, but even against the particular assignee for valuable consideration. Hornsby v. Lee, 2 Mad. R. 16; Purdew v. Jackson, 1 Russ. R. 1; Honner v. Morton, 3 Russ. R. 65, 3 Cond. Eng. ch. R. 298; Browning v. Headley, 2 Rob. R. 340, 370. And this is the case, as well where the property consists of slaves, as where1] it consists of stock, money or other personalty. See Dade v. Alexander, 1 Wash. 30; Upshaw v. Upshaw, &c., 2 Hen. & Munf. 381; Wade v. Boxley, &c., 5 Leigh 442. 1 B. Mon. 152; 7 Id. 535; 9 Id. 94; 12 Id. 40. In Upshaw v. Upshaw, &c., Judge Tucker said that the husband “might have sold his wife’s reversionary right, it being a vested interest, yet, if he neglected to do so, he could not dispose of it by will, but it would survive to her.” The former part of this remark is a mere dictum, and is not law—at least to its full extent—as a sale by the husband would have been defeated by the wife’s right of survivorship. But the case shows that the wife’s vested remainder in slaves does not vest, absolutely and immediately, in the husband.
The deed in this case then must be regarded as a conveyance by the husband of his contingent interest in his. wife’s vested remainder in the slaves. And so regarding it, is it valid ?
If it had been for valuable consideration, instead of being voluntary, it would certainly have been valid, (as before stated,) in the event that has occurred; though it would have been ineffectual if the wife had survived the *249 husband and the life tenant. A husband’s assignment for value of his wife’s legal chose in action is good against the wife, because it is equivalent to a reduction into possession. Having a right to reduce it into possession, he, in effect, does so, when he receives value for it. By selling- it, he agrees to reduce it into possession for the benefit of the vendee; and a court of equity, in such a case, considers that as done which is agreed to be done. But the husband’s assignment of a vested remainder of the wife has not that effect; because, not having then, a right to reduce the property into possession (actually, he cannot do it constructively. The assignment for value by the husband, places the assignee in the husband’s shoes, and invests Mm with the husband’s contingent interest, which will become absolute in the assignee", when and as it would have become absolute in the husband if he had made no assignment. See Browning v. Headley, 2 Rob. R. 370, and the cases cited.
But what is the effect of a voluntcmj conveyance by the husband of his contingent interest in his wife’s vested remainder in slaves % That is the question we now-have to consider; and it is the only remaining, though most important, question in the case.
An executed gift is valid though voluntary, and passes the title in the subject to the donee. But an executory gift does not, of itself, pass the title; and to perfect it, the aid of a court of equity would be necessary. That court will never aid a volunteer, at least if he be a mere stranger, to perfect his title; unless the property was so transferred as to create the relation of trustee and cesitd que trust. 2 Sug. Yend. 936. A court of equity will not assist to create a trust in favor,, of a volunteer, but where the trust is actually created, equity will enforce its execution. And a party may so constitute himself a trustee, that a court of equity will execute the trust in favor of a volunteer. Ellison v. Ellison, 6 Ves. R. 656; *250 1 Leading cases in Equity 199 kfarg. and notes, Am. ed. 1859. But it is unnecessary to consider further the subject of trusts, as none was created, or intended to be so, in this case.
Then, was the gift in this case executed or executory ? In form it is certainly an executed gift. It is by & present conveyance of an interest; not a contract for & future conveyance. If the interest had been a present or vested one, the conveyance would certainly have been an executed, not an executory gift. But the interest being contingent, it is contended that it could not be conveyed,- and therefore the conveyance cannot be valid as an executed gift. It might in that view still be valid, as an executory, though in the form of an executed contract, if it were founded on valuable consideration. A court of equity would, in that case, treat it as a contract to convey, when the interest, by becoming absolute, should become capable of being conveyed. But being voluntary, a court of equity would not give effect to it in that way, since that court, as before stated, never assists a volunteer to perfect his title.
The question than resolves itself into this : Can such a contingent interest be cowoeyed ? If it can, the interest in this case was conveyed, by a good and valid conveyance. If it cannot, the conveyance is ineffectual, either as an executed or an executory gift.
It is a general rule that property is not only liable for the owner’s debts but may be sold, or even given away, at the pleasure of the owner. 2 Spence’s Eq. Ju. 896. It was a rule of the common law, subject only to a few exceptions, that “no possibility, right, title, nor any thing in action should be granted or assigned to strangers, for that would be the occasion of multiplying contentions and suits.” Id. 850. But the court of chancery, from the earliest times, has given effect to assignments of every kind of future and contingent interests and possibilities *251 in real and personal property, if made for valuable consideration ; Id. 852; unless indeed they were void for maintenance or champerty. Formerly equitable estates and interests were coi3sidered as choses in action, and assignments of them were treated 03ily as executory contracts. But a trust or equitable estate is not now considered a chose in action. It is a present interest or estate, and whatever would be the rule of law if it were a legal estate, is applied in equity to a trust estate. The legal estate follows the trust or equitable estate as its shadow, into whose hands soever the legal estate may descend or be conveyed, except it pass to a purehaser for valuable consideration without notice. Id. 875. A trust or equitable estate or interest may therefore 3iow he assigned in equity, as a legal estate or interest of the same kind might be at law; and effect is given to the assignment as an executed, and not an executory contract. So that a volmitary assignment of such an estate or intei-est is valid, if it be co3nplete. Id. 880, 907. So also a volmitary assignment of a chose in action will be effectual at law or in equity, if it be complete; the only question being as to what is necessary to make it - co3nplete. Id. 865, 907. ‘ And that question depends on the circumstances of the case. Until complete, the donoi-, as in every other ease of executoiy gift, has the locus penitential. As to voluntary assignments of contingent interests, possibilities and expectancies in personal chattels, they are valid if complete; unless the subject of the assignment be a mere possibility, uncoupled with an interest. Id. 910. An assignment of such a possibility is ineffectual, except as an executory contract, which must of course be founded on valuable considei’ation. A man camiot assign that which does not exist. Id. 866.—■ Though he may make a contract, in regard to it, and if founded on valuable consideration the contract will be enforced when and so far as may be possible..
*252 The case of Meek v. Kettlewell, 1 Hare R. 464, 23 Eng. ch. R.; decided in 1842, was much relied on by the counsel for the'appellant in this case. There M. who, in' the event of surviving her daughter and of the death of her daughter without issue, would as next of kin be entitled to a fund which was vested in trustees, executed a voluntary assignment of her interest in the fund to the husband of the daughter, and declared the trusts of the assignment, as to part for the benefit of kf. herself, and as to the residue for the daughter’s husband. Ho notice of the assignment was given to the trustees. The daughter afterwards died without issue; and the husband filed a bill against the trustee and M. to compel the performance of the trust. Meld, that the voluntary assignment did not create a trust which a court of equity would enforce, and the'bill was dismissed. In that case the interest conveyed was a mere expectancy, founded on a double contingency; and though the Yice Chancellor, in the course of his opinion, makes some dieta which may tend to support the position contended for by the appellant’s counsel, he concludes it by saying: “I deeide only that a voluntary assignment of a mere expectancy, not communicated to those in whom the legal interest is, does not create a trust in equity within the principle of the cases relied on by the plaintiff.” This decision was affirmed on appeal, by the Lord Chancellor. 1 Phil. R. 342, 19 Eng. ch. R. But it can afford little or no aid to the appellant, and has been much shaken, if not overruled, by subsequent decisions.
In Kekewich v. Manning, 12 Eng. L. & E. R. 120, decided in 1852, effect was given to a voluntary assignment of an equitable chose in action. Knight Bruce L. J. reviewed the authorities very fully, and in the course of his -opinion expressed himself thus: “As, upon one hand, it is, on legal and equitable principles, we apprehend, clear,'that a person sui juris, acting freely, fairly, *253 and with, sufficient knowledge, ought to have, and has it in his power to make, in a binding and effectual manner, a voluntary gift of any part of his property, wheth- " er capable or incapable of manual' delivery, whether in possession or reversionary, and howsoever circumstanced; so, on the other, it is as clear generally, if not universally, that a gratuitously expressed intention, a promise merely voluntary, or to use a familiar phrase, nudum pactum, does not (the matter resting there) bind, legally or equitably.”
In Voyles v. Hughes, 23 Id. 271, decided in 1853-4, effect was given to a voluntary assignment by deed, of a reversionary interest in stock standing in the name of trustees. Stuart V. C., after referring to the decision in Meek v. Kettlewell, said : “The soundness of the doctrine which treats a deed of assignment complete in form, as a mere agreement, although it in terms assigns and transfers an equitable reversionary interest in personal ' property, and which denies to it in this court, if voluntary, any effect as a transfer of the right to property, has been much questioned. If that doctrine is to prevail, it deprives the owners of reversionary personal property of the right of alienation by one legitimate mode. As abridging the right to alienation, it materially lessens the value to its owners, of the enormous and increasing amount of reversionary personal property. Fortunately, in the recent case of Kekewich v. Manning, a more liberal and enlightened view of the law upon this subject was‘taken.” See other cases referred to in the notes to Ellison v. Ellison, 1 Lead. ca. in Eq. Am. Ed. supra. where the authorities on the subject are fully collected and commented on. See also the case of Jones & wife v. Obenchain, 10 Gratt. 259.
In Dold’s trustee v. Geiger’s adm'rs, 2 Gratt. 98; this court held that dioses in action to which the .wife becomes entitled during her coverture, even though they *254 be such as are subject to her equity, are liable to the claims of the creditors of the husband, (in subordination of course to her equity). And, for the same reason and to the same extent, they may be sold or given away by the husband; as is expressly said by Judge Stanard in his able opinion in that case, in which the other judges concurred. Id. p. p. 106,110 and 111. Though his gif t of them would of course be subject to her right of survivorship.
It may be stated as the result of all the authorities ; that a voluntary gift valid in law or equity, may be made of any property real or personal, legal or equitable, in possession, reversion or remainder, vested or contingent, and including choses in action unless they be of such a nature as that an assignment of them would be a violation of the law against maintenance and champerty; that such a gift, to be valid, must be complete, and not executory; that what is necessary to the completion of a gift, depends on the nature of the subject, and the circumstances of the case; and that it is always sufficient, though not always necessary to the completion of a gift, at least between the parties, that the donor do everything in his power, or which the nature of the case will admit of, to make it complete.
How let us apply the principles before stated to this case. What was the nature of the interest conveyed ? It was not a mere possibility or expectancy, but a substantial, appreciable interest. It was a legal interest.— The wife had a vested remainder in slaves, expectant upon a life estate. The particular estate and remainder made together but one absolute estate in the slaves.— The assent to the legacy of the particular estate enured to the benefit of the remaindermen, who, though not in actual possession of the remainder during the existence of the particular estate, yet had all the possession of which a remainder is susceptible. The remainder was *255 not a mere chose in action, but at most a quasi chose in action. Ho action was necessary to reduce it into possession, but at the termination of the life estate it would fall into the possession of the remaindermen by operation of law. The possession of the life tenant was not adverse to them, but was in some sense their possession, as both held under the same title. The possession of the remaindermen was not that actual or constructive possession which is necessary to perfect a husband’s title to his wife’s personalty; but was capable of maturing into such a possession by his surviving his wife or the life tenant. In that event her interest in the subject would become absolutely the property of him or his assigns, without any administration on her estate in case of her death before actual possession obtained. In that respect, the interest seems to differ from a chose in action proper, of the wife ; and to be more like her chattels real, to which the -husband or wife is entitled absolutely by survivorship. Though in other respects the two subjects differ; and especially in this, that the wife’s right by survivorship to her chattels real may be defeated by the alienation of the husband in his lifetime, even though without consideration, but not by will; whereas her right of survivorship to her interest in remainder cannot be defeated by his alienation, even for valuable consideration. (See 3 Coke by Thomas Marg. 306 note M., 310 note O, where will be found, in a condensed form, a full statement of the husband’s right in the chattels real and personal, and choses in action of the wife.) That such is the nature of the husband’s interest in the wife’s vested remainder in slaves expectant on a life estate therein, is shown by the cases in this court of Dade v. Alexander, 1 Wash. 30 ; Upshaw v. Upshaw, &c., 2 Hen. & Munf. 381; and Wade v. Boxley, &c., 5 Leigh 442; and also by the cases in Kentucky of Banks' adm'r v. Marksberry, 3 Litt. R. 275 ; Turner v. Davis's *256 adm'r, 1 B. Mon. R. 152; Green's heirs v. Boon, 5 Id. 556; Ring, &c., v. Baldridge, &c., 7 Id. 535; Davenport v. Prewett's adm'r, 9 Id. 94; and Sander's ex'ors v. Sanders, 12 Id. 40. Whether the rule thus established in regard to slaves is confined to them, or extends to other tangible property, or even to stocks, money and other subjects, which are more of the nature of choses in action, it is unnecessary to enquiry, as the subject in controversy here is slaves, and the rule seems to be well established as to them.
Such being the nature of the husband’s interest in this case, it was clearly assignable, with or without consideration. And we think it would have been so, even if it were necessary that administration should be taken on the estate of the wife to reduce the interest into possession ; as, in that case, the administrator of the wife would be but a -trustee for the assignee of the husband. The interest being assignable, it was effectually assigned, in the best, if not the only way in which it could have been, at least to volunteers, by deed duly recorded. And the husband having survived his wife and the life tenant, his assignees are absolutely entitled to her share of the slaves, or of the proceeds of the sale-thereof. The decree ought'therefore to be affirmed.
Degree affirmed.