Daniel, J.
The demurrer was properly overruled. *403 There is no misjoinder of counts. Each of the counts is a count in case for a tort. The second is confessedly so; and the statements and allegations in respect to the contract of hiring contained in the first, do not impress upon that count a different character. The act" complained of in the first count, as in the second, is, in its nature, a tort or injury to the reversioners, and the allegation that the wrongful or tortious act was done in violation of a contract with the life tenant, does not make the first count any the less a count for a tort. The gist of the complaint contained in the first count, is, just as obviously as in the second, the doing of the wrongful and injurious act by the hirer, of putting the slaves without the permission of the owners, to a dangerous employment and thereby causing the injury to him, and the loss to the reversioners.
If it be true, as argued, that the life tenant with whom the contract of hiring was made, might have brought and maintained her suit for the entire damage caused by the injury, still it does not follow that the reversioners were compelled to seek through her, a redress for the wrong done to them. -On the contrary the authorities are clear that'in such cases the reversioners may sue in case for the injury to the reversion.
There is no allegation in the declaration, that the cause of action which it sets forth, in any manner, accrued to Whittle in his character of administrator. It is not stated that, at the time of the wrong complained of, his intestate Cornelia L. Whittle (his wife) was the owner in part of the slave in reversion, nor that the title to the slave in reversion, at the time aforesaid, was in Whittle in his representative character, jointly or in common with the other plaintiffs. The addition of the words “administrator of Cornelia L. Whittle deceased, who was Cornelia L. Skipwith,” must therefore be treated as a mere designation or descrip *404 tion of tlie person, and does not render the declaration ^ , . . obnoxious to the objection, urged against it, of uniting Whittle as a personal representative with parties assert-c^ms ™ lh©ir own right.
The first and second pleas, the rejection of which by the court is made the ground of the second and third error assigned, seek to present the same question. They were properly rejected; Whittle was suing in his own right. • •
The fourth assignment cannot be sustained. There is no conflict or inconsistency between the conduct of the life tenant in receiving the slave and his hire, and the right of the reversioners to maintain their action on the case for the wrong and injury to the reversion of which they complain. In an action of trover arid conversion by the life tenant, a plea, relying on such conduct as amounting to an implied waiver of her cause of action, might be made, not without some show of argument in its favor. It might be said, in such ease, that the action proceeded on the ground of a destruction of the property of the plaintiff by the wrongful act charged as a conversion, and that a waiver of the conversion was involved in taking back the slave and receiving the hire after the wrongful act: the plaintiff thus evincing; by her acts, a purpose to treat the properly in the slaves as unchanged. Be this as it may, however, it is not perceived on what ground such a plea could avail, even against the life tenant, in an action on the case founded upon no alleged conversion of the slave, but proceeding on a. subsisting right of property in the slave. A fortiori, such acts of the life tenant cannot be held to preclude the right of the reversioner to maintain an action on the case for the injury inflicted on their interests in the subject.
The question, presented by the fifth error assigned, has been already disposed of in passing upon the demur *405 rer. The contract of hiring, between the life tenant and the plaintiff in error having been properly set out in the declaration by way of inducement, it could not be error in the court to allow it to be proved as laid. •
The first instruction given at the instance of the defendants in error, and the giving of which is made the ground of the sixth assignment of error, is plainly right. It asserts the proposition that, if a hired slave is put by the hirer to a dangerous employment in violation of the contract of hiring, and is seriously injured while thus employed, the hirer is liable for the damage, notwithstanding the slave may have been negligent or imprudent or have acted in disobedience of the orders of the hirer in respect to such employment, and notwithstanding such negligence or imprudence or disobedience may have been the proximate cause of the injury. This proposition is fairly dedueible front the decision and reasoning of this eourt in the case of Harvey v. Epes, 12 Gratt. 153; and is fully sustained by the cases of Hooks v. Smith, 18 Alab. R. 338 ; The Mayor and Council of Columbus v. Howard, 6 Georgia R. 213; Gorman v. Campbell, 14 Georgia R. 137; King v. Shanks, 12 B. Monr. R. 410; and Sims & Smith v. Chance, 1 Texas R. 561.
The seventh assignment of error is based on the refusal of the court to give the fourth, fifth and sixth instructions asked for by the plaintiff in error. The fourth instruction is plainly without any warrant in the usages and practice of the courts. If the plaintiff in error desired the court to construe the contract of hiring, he should have stated the construction which he wished the court to propound to the jury, or at least have asked the court to declare the true legal import of tíre contract. Trials at law would be interminable if the courts were bound, at the instance of the' parties, to point out to the jury, the particulars in which a ease on *406 trial resembled, or differed, from, other cases cited by counsel as precedents.
There was no evidence on which to found so much of -^h ^ruction as asked the judge to say, to the jury, that if they believed that the slave was put to the alleged forbidden employment,. by the agent of the defendant, out of the line of his.authority and against the orders of the defendant given to said agent, then they should find for the defendant. It is true that the witness William S. Davis says that Harvey gave him instructions not to put any of the negroes to work in blasting rock, or' using powder. But' he says, further, that he obeyed those instructions, and never did put auy of the negroes to that part of the work, or permit them to be nigh when it was going on. He goes on, however, afterwards, to say that sometimes some of the negroes, were sent to bring- the keg of powder from its place of safe deposit near, but after they had brought it and put it down, they were sent away to their regular work, and had nothing to do with it any further; that Jefferson may have sometimes been called upon to do that; that he does not remember that he was called upon on the occasion in question, but thinks it probable that he was; that after putting the powder in the hole witness always called out to the hands, if any were working near, to get out of the way, that he was going to fire the blast. Then witness primed the hole, put a slow match to it himself, got out of the way and stayed away until it fired. That (he continues) was what is meant by blasting—that is, putting the powder in the hole, fixing it up and fifing it off; that was always understood to be its meaning among railroad men. The negroes (he proceeds) were never put to that, although they sometimes drilled the hole, and sometimes brought the keg of powder, though most generally witness brought up the powder himself. There is obviously nothing in the *407 statements of tliis witness (who is the one most favo- ... t rabie to the views of the plaintiff in error,) tending to show that, in employing Jefferson as he did, he was acting out of the line of his authority or against the •orders of Harvey. He was, (as he styles himself in his deposition,) “the overseer or personal superintendent of the hands,” whose orders they were bound to obey, and the manifest tendency and drift of his evidence is to show that, in employing Jefferson to bring up the keg of powder to the place at whieh it was to be used in blasting, he was acting in strict conformity with the coutract of hiring as understood- and construed by “railroad men.” And in the sixth instruction the court is asked to say to the jury that this is the true construction of the contract: that is, that though the jury should believe from the evidence that Jefferson was employed to drill the hole in the roek and to bring up the keg of powder to the place where the superintendent intended to use it, yet they should not find for the plaintiffs, if the jury believed further that bringing up the keg of powder was all that the said negro had to do with the matter of blasting and using the powder, and that after he had delivered the keg, it was his orders, and in accordance with the general use and eustom of the negroes, to go back to his regular work, and that his lingering at the place was without the knowledge or consent of the defendant or his agents and against their orders. The witness Skipwith who proves the contract of hiring, states that in his negotiation with Harvey for the hire of Jefferson, Harvey remarked to him that he seemed to have an objection to hiring the hands to him. That witness told ’ him he had; that the negroes had complained to him of being engaged in blasting the year before. That Harvey said this was a mistake, that his overseer did the blasting. That witness then said that he had orders from his mother not to hire them for *408 blasting;, and that he would not hire them to blast, or use powder in any way; that white men became care-.less in using powder and negroes more so. That Harve7 then overseer did the blasting, and that there would be no danger; whereupon the bargain was closed.
Now, one of the well received senses or meanings of the word “use” is the act of handling or employingin any manner and for any purpose; arid there- is no proof that Skip with knew of the technical and restricted' meaning given by railroad men to blasting, or using powder (if indeed such evidence could affect the case,) nor that Harvey had referred to such meaning, in contracting, as he impliedly, if not expressly.did, that Jefferson should not be put - to blasting or using powder in any way. The court I think properly refused to give the sixth instruction.
The eighth and last assignment of error is on account of the court’s refusal to grant a new trial. Nearly all of the questions which could arise on a motion for a new trial have been already considered in passing upon the proceedings preliminary to the verdict. Putting the' case on the footing most favorable to the plaintiff in error, it is still made to appear that the injury to the slave was the consequence of a breach by said plaintiff of the duty imposed on him by the contract of hiring. Tire slave is proved to have been worth $1,000, and he .was rendered valueless by the injury; and the life tenant is proved to have been over sixty years of age; and it cannot therefore be truly said that $520 was much (if any) in excess of the four-fifths of the value of the reversion, which under the instruction 'of the court the plaintiff’s in the action were allowed to recover. The court properly instructed the jury that, the plaintiff’s, in the action, could recover nothing in that suit in virtue of the assignment and release to them by Thomas B. *409 Skipwitli of his interest in remainder to the slave. This instruction, however, does not show that Whittle was without an interest in the suit.' Jure ma/ritihe was entitled to the interest of his deceased wife in the slave. We have shown that he was-not to be regarded as suing as administrator of his wife; and the authorities show that in such a case as we have here he may maintain a suit, in respect to such interest, in his own name, without taking out letters of administration on the wife’s estate. Wade v. Boxley, 5 Leigh 442, Henry v. Graves, supra 244.
Other objections to the proceedings were stated in the course of the argument, but I deem it unnecessary to say more in respect to them, than that they fail, in my opinion, to disclose any sufficient reason for reversing the judgment.
The other judges concurred the opinion of Daniel, L
Judgment affirmed.