MONCURE, P.,
delivered the opinion of the court:
*435 The court is of opinion that by the will of John Clarkson the slaves Mealy and her children, which were thereby given to his daughter Betsey Taylor and her husband Abram Taylor, were limited at the death of the survivor of them, to the rest of the testator’s children, upon the ^contingency of the death of his said daughter without issue living at her death. Although the words “and if it so happens that above Betsey Taylor die having no bodily heir, ’ ’ immediately following the bequest to her and her husband, might, standing by themselves and unexplained by anything that follows them in the will, import an indefinite failure of issue, yet followed a.s they are by the words “that she and Major Abram Taylor is to enjoy them during their life, but is not to remove the said negroes out of this state, and at their death to be equally divided among the rest of my children,” an intention is unmistakably indicated to confine the contemplated contingency to the period of their death, or rather that of the survivor of them. In the event of the happening of such contingency, they are to be regarded as having been mere tenants for life, expressly restrained from removing the negroes out of the state; and at the termination of the life estate, or, I in the language of the will, “at their death” j (words , which are very significant), the | negroes are directed to be equally divided ■ among the rest of the children. \
The court is further of opinion that after the death of the testator and before the death of his said daughter, the contingent executory limitation aforesaid to the rest of his children created such an interest in them as that the respective porti ons of any of them dying during that period devolved on their personal representatives respectively, and at the death of the said Betsey Taylor, who survived her said husband and died without ever having had issue, such of the rest of the testator’s children as were then living, and the personal representatives of such of them as were then dead, were tenants in common of the said slaves and their increase, or such of them as were then in existence, and as such were entitled to the possession thereof, and in such possession, at least constructively, *and were entitled to maintain a joint action for any subsequent wrongful detention or conversion of the same or any part thereof. 1 Lomax on Ex’rs, p. 319, marg. ; 1 Tho. Co. Lit. 783 ; 3 Rob. Pr., new ed., 163; Rose’s adm’x v. Burgess, 10 Leigh 186, and especially the opinion of Stanard, J., in that case. As tenants in common of personal property must join in an action for an injury to such property, and as a personal representative of a deceased tenant in common becomes a tenant in common with the survivors, it follows as a necessary consequence that he must join with them in such an action. The rule is different where two or more persons are jointly entitled, as parties or otherwise, to a chose in action, and one of them dies. There the remedy survives, though the right does not, and the action must be brought in the name of the survivors only. This was long a mooted question, and was at one time held otherwise in England. But it was decided in the case of Martin v. Crompe, 1 Lord Raym. R. 340, that the action must be in the name of the survivors alone, Lord Holt assigning asa reason that it would make strange confusion that one party should sue in his own right and another in another’s. This decision had ever- since been held in that country to be undoubted law, as was said by Parke, B., in Buckley v. Barber, 1 Eng. L. & E. R. 506; and the same doctrine is firmly established in this country. 3 Rob. Pr., new ed., p. 164, and authorities cited. There is this difference, then, in regard to the proper persons to be made plaintiffs in an action for the wrongful detention or conversion of personal property held by tenants in common, between a case in which the death of one of them occurs before, and a case in which such death occurs after, the wrongful act; that in the former case the action for such act must be brought , in the joint names of the survivors and the personal representative of *the deceased tenant in common, while in the latter it must be brought in the names of the survivors only; and where it is properly brought in the joint names of the survivors and the personal representative' of the deceased tenant, and one of them dies pending the action, whether he be such personal representative or one of the survivors, it abates as to him and proceeds in the names of the surviving plaintiffs only; so that if the person dying be such personal representative, the action is not to be revived in the name of an administrator de bonis non of the deceased tenant in common. In fact, there is no difference in the rights in which the plainti ffs sue where one of them is a personal representative of a deceased tenant in common and the others are the surviving tenant. All of them sue in suo jure, though the description of personal representative of a decedent be added to the name of one of them. Such matter of description is unnecessary but harmless, and may be treated as surplusage. 2 Lom. on Ex’rs, 371, marg.; 3 Rob. Pr., new ed., 518; Rose’s adm’x v. Burgess, supra; Harvey v. Skipwith, &c., 16 Gratt. 393. Persons cannot join as plaintiffs in. an action at law in different rights — the one as a personal representative and the other in his own right — for the reason assigned by Lord Holt as before mentioned, “that it would make strange confusion” to do so. A personal representative of a deceased tenant in common must have possession of the subject held in common, actual or constructive, when the wrong is done for which the action is brought, to entitle him to join with the surviving tenants in common as plaintiffs in the action. Title and possession make them tenants in common, and entitle them to maintain the joint action suo jure, even though one of them becomes entitled by being a personal representative, while the others are entitled in their *436 own right. The *possession of one tenant in common is the possession of all who may be entitled as co-tenants with him.
It is a rule of law that the property of personal chattels draws to it the possession, unless they be in the actual adversary possession of another. 1 Lorn, on Ex’rs, 314, marg. A personal representative may, at his election, sue as such, or in his own right (of course, in the latter case, for the benefit of the estate he represents), for an injury to the goods of the deceased after his death, unless such representative be tenant in common of those goods with another, in which case, we have seen, they must jointly sue in their own right. A personal representative being considered in law as the owner of the goods of the deceased from the time .of his death, may declare upon this constructive possession, though he may never have had actual possession before the tort committed; nor will it make any difference whether the injury was done before probate or administration granted, for they relate back to the death of the deceased. Ibid.
The court is further of opinion that the possession of the said slaves or any of them by the said Betsey Taylor during her life was not adverse to, but consistent with the title of the rest of the"1 testator’s children, and that the sale by her of a portion of the said -slaves to the defendant Hoses Booth, even if intended to pass the absolute estate, operated to pass the life estate only of the said Betsey Taylor in the same, and was null and void for any other or further purpose. And the said Moses Booth, after the said sale and until and at the time of the death of the said Betsey Taylor, continued to hold the slaves sold to him as aforesaid consistently with, and not adversely to the right and title of the rest of the children ; and such of the said children as were alive at her death and the personal representatives of such of them as were then dead (though some of the said representa-fives *may not have been appointed or qualified until after that time), eo instanti became entitled to the possession of the said slaves, and by construction of law was in the possession thereof as tenants in common. 1 Rob. Pr., new ed., 508-510, and cases cited. As was said by this court in Henry v. Graves, 16 Gratt. 244, 254-5, the particular estate and remainder made together but one absolute estate in the slaves. The assent to the legacy of the particular estate enured to the benefit of the remaindermen, who, though not in actual possession of the remainder during the existence of the particular estate, yet had all the possession of which a remainder is susceptible. The remainder was not a mere chose in action, but at most a quasi chose in action. No action was necessary to reduce it into possession, but at the termination of the life estate it would fall to the possession of the remaindermen by operation of law. ” To be sure if the life tenant, or the assignee of the life tenant (who by the assignment becomes a tenant per auter vie), holds, uses and enjoys the property as his own after the termination of the life estate, such possession becomes adverse to the remain-dermen and is a wrongful conversion of their property to his use, from the time of which conversion the act of limitations will begin to run against them; as was held by this court in Layne v. Norris’s adm’r, 16 Gratt. 236. But there must be an instant of time, if not in fact, at least in contemplation of law, between the termination of the life estate and such subsequent wrongful conversion of the property by the life tenant, and that instant of time is sufficient to make the conversion a violation and invasion as well of the possession as the property of the remaindermen. Until the termination of the life estate the life tenant cannot hold adversely to the remainder-men, but must hold in subordination to their title. When the life estate terminates the title and right of possession are united in them, and though they have *not. actual, yet they have constructive possession of the property. The law does not, because it cannot, operate an actual transfer of the property from the hands of the life tenant, where it is necessarily found at the termination of the life estate, to the hands of the remaindermen, but it makes his possession their possession, until he wrongfully detains or converts the property; which act, as before stated, is an invasion of their possession as well as of their property. The law will not presume that they intend such a wrong until it is actually perpetrated, and when it is perpetrated it will not relate back to the termination of the life estate, so as to displace the intermediate constructive possession of the remaindermen, which was incident and adhered to their title. This is perfectly consistent with the decision of this court in Layne v. Norris’s adm’r, supra, as will plainly appear by referring to the reasons on which that decision was founded.
The court is further of opinion that the testator’s children, James Clarkson, William Clarkson, .Frances Carter, Catharine Jones, Buey Dodd and Mary Bellenger, having died before the said Betsey Taylor, their personal representatives were tenants in common of the said slaves, or such of them as were in existence when the life estate fell in, with the testator’s son Anselm Clarkson who survived the said Betsey Taylor, and were properly joined with him as plaintiffs in this action. Whether the personal representative of the testator’s sou David Clarkson was also one of the tenants in common at that time and was properly joined as one of the plaintiffs in the action, depends upon whether he also died before the said Betsey Taylor; a fact which is represented in the record as being unknown. But if it be necessary to support the action, it ought to be presumed that he died before her.
The court is further of opinion that the insertion of the name “Daniel” instead of that of “David,” in the order of the Hus *437 tings court of Bynchburg of the 9th August, *1854, was a mere clerical error, which the said court at a subsequent term had a right to correct nunc pro tunc, and did so correct by the order of March 9th, 1859; and that by the former order thus corrected the estate of said David Clarkson was duly committed to the hands of Henry Dunnington, sergeant of the city of Dynchburg, for administration as of the said 9th of August, 1854.
But the court is further of opinion that even if David Clarkson in fact died after the said Betsey Taylor, or if Henry Dun-nington were not the legal representative of said David Clarkson, neither of these facts, nor both of them together, would affect the right of the plaintiffs to maintain this action, inasmuch as the same Henry Dunnington is named as a plaintiff by the description of “sergeant of the city of Dynchburg and as such administrator of Ducy Dodd,” and of “sergeant as aforesaid and as such administrator of Mary Bellenger, ’ ’ as well as by the description of “sergeant as aforesaid and as such administrator of David Clarkson, ’ ’ all of which is mere description of the person and may be stricken out as surplusage; the said Henry Dunnington being but one plaintiff, suing in his own name and right by the descriptions aforesaid.
The court is further of opinion that the plaintiff Robert C. Jones, executor of Prances Carter, having died pending the action, it was properly abated as to him, and further proceeded with in the name of the other plaintiffs.
And the court is therefore of opinion that the Circuit court erred in such and so much of its rulings as are contrary to the foregoing opinion, and especially in setting aside the first verdict of the jury and granting a new trial, instead of rendering a final judgment for the plaintiffs upon said verdict.
Therefore it is considered that the said judgment of the Circuit court be reversed and annulled, and that the *plaintiffs recover against the de-fen da.nt their costs by them expended in the prosecution of their writ of superse-deas aforesaid here. And this court proceeding to give such judgment as the said Circuit court ought to have given, it is further considered that all the proceedings in the action subsequent to the said first verdict of the jury be set aside and annulled, and that the plaintiffs recover against the defendant the negro slave pdmund in the said verdict mentioned, of the value therein mentioned, if he may he had; but if not, then the value aforesaid, together with his damages assessed by the jury in their said verdict, and their costs by them about their suit in the said Circuit court expended. But this judgment is to be without prejudice to any question which may arise in regard to the liability of the defendant for the alternative value of the said slave: this court only intending to give such judgment as the Circuit court ought to have given in the condition in which the case was when the judgment of that court was rendered, without deciding whether the said liability of the defendant is affected, and if so, to what extent, by the provision of the constitution in regard to the abolition of slavery, or by anything else which has transpired since the rendition of the said judgment — it being considered premature by the court to decide that question now, when the parties have not been heard upon it, and facts which may materially affect it have not been brought into the record. If the defendant shall be advised to raise the question in the Circuit court, he will have an opportunity to do so (notwithstanding this judgment), by motion to quash any execution which may be issued upon the said judgment, as to the said slave or his alternative value, or otherwise, as he may be advised. Which is ordered to be certified to the said Circuit court.
Judgment reversed.