Anderson, J.
delivered the opinion of the court.
This is an action on the case against an express company. There are four counts in the declaration. The first is the usual count in case against a common Carrier. The other counts, the plaintiffs in error contend, are in assumpsit, and therefore improperly joined with the first count in case for tort. The question is-raised by a general demurrer to the declaration,- and to each count thereof, which was overruled by the Circuit court. This is the first error assigned.
The first count is properly conceded to be in case for *284 tort. If the other counts are not in tort, the declaration is clearly bad for misjoinder, and the demurrer well taken.
It is contended for the defendants in error, that all the counts are properly in case, and that consequently the demurrer was rightly overruled. The case has been elaborately argued, and much learning evolvod upon the interesting question. I have carefully looked into nearly all the numerous cases cited, as well as others. To state and go through them all would be tedious and unnecessary. "Whatever else may be drawn from them (which it is not. necessary now to inquire), I think the following conclusions, which have an important bearing upon the case in hand, are clearly deducible: First, that an action on the case lies against a party who has a public employment-r-as, for example, a common carrier or other bailee, for a breach of duty, which the law implies from his employment or general relation. This is not disputed. And second, that where there is a public employment, from which arises a common law duty, an action may be brought in tort, although the breach of duty assigned is the doing or not doing of something, contrary to an agreement made in the course of such employment, by the party on whom such general duty is imposed.
In the leading case of Boorman v. Brown, 43 Eng. C. L. R. 843, it was held by the Court of Exchequer Chamber, on error from Queen’s Bench, that the duty resulted from express contract described in the declaration, and not simply from defendant’s character of broker. On a writ of error to the House of Lords, it was objected that the ground taken in the judgment was too broad. But the House of Lords affirmed it. “You cannot (says Lord Campbell) confine the right of recovery merely to those cases where there is an employment, without any special contract. But wherever there is a contract, and something to be done in the course of *285 the employment,' which is the subject of that contract, if there is a breach of duty in the course of that employment, the plaintiff, may either recover in tort or contract. This case has never been overruled that I am aware of. The case of Courtenay v. Earle, 1 Eng. L. & E. R. 333, decided in 1851, recognizes its authority. Maulé, L, says: “ The older cases may have decided that if an action be brought in breach of a stipulation made by one on whom a common law duty is cast, in modification of the duty implied by law, a count on such a breach could iiot be joined with a count in case. The case of Boorman v. Brown, has certainly overruled such an opinion, if any such there was.” This principle seems to be well settled in England and America. Many of the cases go much further, and none I think can be found in conflict with it. I will refer to Coggs v. Bernard, Ld. Raym. R. 909; Samuel v. Judin, 6 East R. 333; Stoyel v. Westcott, 2 Days R. 418; Burnett v. Lynch, 12 Eng. C. L. R. 327; Mazetti v. Williams, 20 Eng. C. L. R. 411; Brown’s Legal Maxims p. 159; 3 Rob. Prac. 439 (new edition); Harvey v. Skipwith, 16 Gratt. 393, and Robinson v. Threadgill, 13 Ired. R. 39.
Eor the appellee it is claimed that all the counts proceed against the defendants as common carriers. Let us see whether the 2d, 3d and 4th counts proceed against them in that character. The 4th count, as well as the 1st; sets out the public character of the defendants, substantially, as common carriers. They are described as expressmen and forwarders, engaged in receiving goods from those who might offer them, and transporting them for reward from Charlotte, ÍTorth Carolina, to Eichmond, Virginia, in cars of the railroads, the use of which' was allowed to them by agreement between them and the railroad companies; the defendants receiving from the shippers entire costs and charges of such transportation; so that the shippers had nothing to pay to the railroad companies for trans *286 portation. It is true that in this description of the character and relation of the defendants, they are not expressly alleged to be common carriers. But the facts set out constitute them to be such in law. 2 Redf. on Railw. p. 16; Southern Express Co. v. Newby, 36 Georgia R. 635. An express company is to be regarded as a common carrier, and its responsibilities for the safe delivery of the property entrusted to it, is the same as that of the carrier. Belger v. Dinsmore, 51 Barb. R. 69. Numerous other cases might be cited, but more are not needed.
The second and third counts do not set out the character of the defendants as common carriers. Held, on-general demurrer, not to be necessary. Pozzi v. Shipton, 8 Adol. & El. 574. But they are sued as an express company, which is prima facie a common carrier. Redf. on Carriers, p. 45, sec. 58; and they are consequently, as such, declared against in all the counts.
The question now arises, do the facts, as set out in the declaration, which upon demurrer must be taken to be true, show that the goods were delivered to the defendants, so as to charge them as carriers ? The first and second counts expressly allege a delivery of the goods to the defendants. According to the third and fourth counts, an actual delivery was not made. But the goods were delivered at the place where the defendants agreed to receive them. And the defendants had due notice of their delivery at that place. Does this constitute in law a delivery to them in their public character of carriers ?
If the goods were delivered for carriage, of which they had notice, and the place where they were delivered was their usual place of receiving similar articles, the company would be responsible to the end of their route. Redf. on Car., p. 80. And, though the place, where the goods were delivered, was an unusual place, the acceptance by the carrier will be sufiicient to charge *287 him. Redf. on Railw. p. 48; L. Ellenborough, 2 Maul. & Sel. 172; Southern Express Co. v. Newby, 36 Georgia R. 635. Is not the legal effect the same, if the place was designated before the delivery, and the plaintiff instructed to deliver them there; or the defendants contracted to receive them there, and were duly notified of the delivery ? It would seem so in reason. The agreement only substitutes the place agreed on for the delivery, for the usual place of delivery. "We have seen that they are in charge of the carrier, when delivered at the usual place, upon notice. And they are as much in his charge, when delivered at the place agreed on, upon notice. Can it make any difference whether the goods are delivered at the usual place, or the place agreed on, provided the carriers have notice of the delivery. We think not. When railroad companies contract to receive, or deliver goods at other places than their stations, it has been repeatedly held, that they are undoubtedly bound by such undertakings. Redf. on Car. p. 86, see. 104, citing Farmers’ & Mech. Bank v. Chaplain Transportation Co., 23 Verm. R. 186, 209; Noyes & Co. v. Rut. & Bur. Railway Co., 27 Verm. R. 110; 1 Pars. on Cont. 661. Redfield on Railways says, p. 25, sec. 34 : “ Instructions given antecedently to the delivery of the goods, but in contemplation of such delivery, on part of both the owner and carrier, are of the same binding force as if given at the very time of the delivery.”
But, were the goods delivered for carriage or warehousing? The main and leading object, undoubtedly was, to get the goods from Charlotte to Bichmond. The defendants were public carriers between those cities. The plaintiff applied to them to carry them. The defendants agreed to carry them,' and to receive them at the depot, on delivery by the railroad, and move and' deposit them in their warehouse, and deliver them, in a reasonable time, safely to *288 the plaintiff in Richmond; and received the reward f°r transporting and insurance. The depositing of the goods in their warehouse, seems to have been as means an en^ ’ as ancillai7 ^o tiheir undertaking to carry the goods to Richmond, and there safely deliver them ^ plaintiff.
When a common carrier is also a warehouseman, questions of difficulty may often arise, in which character he received the goods. In this case it does not appear that the defendants were engaged in warehousing as a distinct employment. It only appears that they were common carriers, and had a warehouse. The establishment of warehouses by express companies or railways, may he considered as a part of their business as carriers, and for their own convenience and advantage. Redf. on Oar. p. 92, sec. 109. And it is a fact of public notoriety, that express companies have their warehouses or offices, where they receive goods for transportation, and where they deposit goods which they have sent out for, and brought in, to he transported. They have them for their own convenience. I do not think, therefore, that, because express companies have a warehouse, it follows, necessarily, that they are ware-housemen. But, whether the defendants in this case were warehousemen or not, they were common carriers, and they had a warehouse, where the goods were to he deposited for carriage. In such cases, is there any test, or well-defined rule, by which it can be determined, in what character the parties charged with the goods are liable ?
It seems to he well settled, that the responsibility of a carrier attaches upon the delivery of the goods at his warehouse, unless there are special directions given by the owner. Redf. on Car. p. 92, citing McCarty v. New York & Erie R. R. Co., 30 Penn. R. 247. And it is his duty, not only to carry safely, hut also, if no time is stipulated, in a reasonable time. 1 Smith’s Leading *289 Cases, p. 304. What can relieve him from this obligation and liability ? Nothing but the act of the owner of the goods. & may relieve him from his common law liability, by directing him to do that which is incompatible with his common law duty as carrier. As, for example, if the owner directs him to “ keep back the goods,” or not to forward them “ until further orders,” or until “ he hears from his consignee,” he is relieved by such instructions by the owner, from his liability as carrier; because it is impossible for him, if he obeys the instructions, which the owner has a right to give, and he is bound to obey, to discharge his duty of carrier, to forward the goods presently, or in a reasonable time. And the goods remaining in his custody, he is not liable as carrier, but only as an ordinary bailee, as long as the special instructions are operative. But when they are revoked, and the owner gives orders to forward the goods, his liability as carrier immediately attaches. This is reasonable, and I think it will be found to be the principle which underlies all the decisions which have been made upon the subject. See Clarke & als. v. Needles, 25 Penn. R. 338; Blossom v. Griffin, 3 Kern. 569; 2 Redf. on Railw. p. 49; Redf. on Carriers, p. 81, sec. 97.
In the case before us, the defendants’ undertaking to carry the goods in a reasonable time to Richmond, was only what the common law duty of the carrier required. Hence, there was nothing in the instructions of the owner, or in their agreement, to interfere with théir duty as carriers, and, consequently, nothing to relieve them from their liability as such. It is true the goods were not delivered to them, at their warehouse, but they were delivered at the place where they agreed to receive them, and from thence to move them to their warehouse themselves: which we have seen, is the same in effect, as the delivery at their usual place of receiving.
*290 As common, carriers, then, the defendants were liable for the safe delivery of the goods to the plaintiff at Richmond, and were insurers, independently of their express agreement: and consequently the action against them is properly conceived in case.
But it is contended for the plaintiffs in error, that the second, third and fourth counts do not proceed in case, but are in assumpsit, because they do not aver a duty, or a breach thereof. It is true that they do not aver, toiidem verbis, the duty of the defendants. But they aver facts, from which the law infers a duty, which is all that is necessary. Lancaster Canal Co. v. Parnaby, 39 Eng. C. L. R. 54. Each of them sets forth facts, from which the law infers a duty; and then, averring that the defendants not regarding their said duty, assigns the breach. The court is, therefore, of opinion, that each count in this declaration contains allegations sufficient to support it in case. And though they may be sufficient in assumpsit, as in Church v. Munford, 11 John. R. 480, they are nevertheless good in ease; and that, therefore, the court below did right to over- - rule the demurrer. .
The second assignment of error is, that the court erred in refusing the instructions to the jury moved by the defendants’ counsel, and in the instructions which it gave, and in overruling the motion for a new trial.
It is not in the power of this court to say whether the verdict ought to have been set aside, and a new trial awarded, on the ground that it was not supported by the evidence, as the facts are not certified. But, if the court erred in refusing, or in giving instructions' to the jury, that was good ground for setting aside the verdict. We will now inquire whether this objection is good.
The first instruction moved by defendants’ counsel was, “ That, in order to find a verdict against the defendants as common carriers, the jury must be satis *291 fried that the defendants received the goods, for the loss of which they are charged, and that they were delivered to, and received hy them, as carriers, to be transported for the plaintiff.” This instruction was given by the court verbatim. Of course they do not object to that; but to the additional instruction, given by the court, which, immediately follows, and is in these words : “ But, if the jury believe that the defendants, through their agent at Charlotte, North Carolina, agreed with the plaintiff, on the arrival of the goods there, to take charge of them, and to carry them to Richmond, for hire, then they are liable, if, in a reasonable time after the same reached Charlotte, and they had notice thereof, they failed to take charge of said goods, and they were lost by reason thereof. If the jury believe the defendants were an express company, following the business of carrying goods, for hire or reward, from Charlotte, North Carolina, and points south of it, to Richmond, Va., of such as chose to employ them, they were common carriers.”
The court is of opinion, that the propositions of law contained in both branches of this additional instruction, are correctly stated. Nor does the instruction undertake to decide any fact in the case, or to charge the defendants with any contract, which is not proved to the satisfaction of the jury. The instruction, it seems to the court, does not assume any facts or any contract to have been proved; which would have been error; but only declares the legal consequences, if the jury should believe, from the evidence, that such a contract, or such facts, were proved. And the court is of opinion, that the law is accurately declared. "Whether the peculiar facts of the case were ignored, it is not perceived how this court could undertake to decide, unless the facts had been spread upon the record. But, if it is meant by the objection, that the instructions were upon an abstract point of law, having no rele *292 vancy to the case then before the jury, we cannot concur in that view. "We think the pleadings in the cause, and the bill of exceptions, show that the points-upon which the instructions were given, were involved in the issues, and, therefore, that the objection cannot be sustained. We are also of opinion, that in instructing the jury as to what would constitute the defendants common carriers, it was proper to say, from Charlotte to Richmond, without designating “ the railroad depbt,” within the limits of the former place; for, if they were common carriers from Charlotte to-Richmond, and agreed to accept the delivery of the goods at that depot, to cany to Richmond, their liabilities attach from their delivery at that place and notice.
Another objection urged by counsel for plaintiffs in error, to this instruction is, that it affirms the liability of the defendants under a contract made by the plaintiff with an agent, whether it was within the scope of' his authority or not; and that the instruction was defective, in not explicitly declaring what the law was-on the question as to the scope and authority of the agency, which was the point in the case.
As to the first branch of this objection, the court does not understand the instruction as affirming any contract made by the plaintiff with an agent. The instruction does not assume that there was any such contract. The case is put hypothetically. If the jury-should believe, from the evidence, that the defendantsr through their agent, agreed. The jury must be satisfied that the defendants agreed. If the defendants contracted through another, the instructions require that the jury must be satisfied that he was the agent of the-defendants, and, consequently, that he was acting within the scope .of his authority.
As to what was necessary to constitute such an agency, no instruction was given. If the counsel for the defendants regarded it as the point in the case, he- *293 might have moved an instruction upon it. This was not done; and it is not ground for reversal now, that the coiu’t did not instruct upon it. The hill of excep tions cannot be treated as a demurrer to evidence, and a point be raised which was not asserted in the motion for instructions to the jury. A party moving an instruction ought to lay his finger on the point. Baldwin J. in Trice v. Cockran, 8 Gratt. 450.
"With regard to the second instruction, we have had more difficulty. But upon further consideration we do not think there is any error in it to the prejudice of plaintiffs in error, of which they can complain. The first branch of it is in these words: “To entitle the plaintiff to recover of the defendants as forwarders and not as common carriers, the jury must be satisfied, from the evidence, that the defendants contracted to take his goods from the railroad depot and forward them to Richmond, and that compensation Avas received for forwarding said goods, and that the defendants negligently failed to forward the same, whereby they Avere lost to the plaintiff.”
If the defendants had agreed to insure the goods against fire &c., from the time of their being put into their charge at the railroad depot, until they were •safely delivered to the plaintiff at Richmond, as is alleged in the 3d and 4th counts of the declaration, and ■as is stated in the bill of exceptions, evidence was offered tending to prove, it would seem, that the instruction is not broad enough. But as it is not prejudicial to the plaintiffs in error, and is not complained of by the defendants in error, the judgment cannot be reversed for that cause.
The second branch of this second instruction is, “But if the jury shall believe that the defendants, at the time they agreed to forward said goods, were ex-pressmen, and when they agreed to forward said goods ■also agreed to transport them to Richmond, and re *294 eeivecl compensation therefor, they are liable as common carriers.” We'think the proposition is true, that when goods are delivered to parties to he forwarded an(^ transported, and those parties are expressmen, and receive compensation for forwarding and transporting, g00(jg are their custody as carriers. And that is substantially the instruction given. The court does not understand this instruction as confounding the distinction between common carriers and mere forwarders, or as affirming that the liabilities of both are the same, as was ingeniously argued by counsel; hut as only affirming that when the forwarder is ah express-man and receives the goods not only to forward, hut to transport, and receives the reward for transporting, he is liable as a common carrier: which we believe to he true. But lest the jury might infer, from the foregoing instruction, that an expressman could not receive goods as a mere forwarder, and incur only the liabilities of a warehouseman, the court gives the 3d instruction: “But if the jury believe, from the evidence, that the defendants made no agreement for the immediate transportation of the goods of the plaintiff, but agreed, to forward them as soon as they conveniently could by raikoad; and before they could conveniently forward 'them they were consumed by an accidental fire, not attributable to the negligence of the defendants, then the defendants are not liable.” This instruction goes-fully as far as the defendants had any right to require; and we think can only he supported upon the hypothesis that the defendants did not expressly undertake to insure the goods after they were to be in their charge, until delivered to the plaintiff in Richmond, nor receive compensation therefor, as the plaintiff alleged in the 3d' and 4th counts of the declaration, and. offered evidence tending to prove, as shown by the hill of exceptions. And the instruction, it seems to me,, ought to have been given with such qualification. The *295 4th instruction is in the language of the 2d instruction moved by defendants’ counsel, except one word, “common,” which is put before “carriers,” and does not alter the sense. .This instruction is liable to the same objection which we have mentioned in regard to the 3d instruction; because if the goods were under the control of the defendants as forwarders, and not as common carriers, and were consumed by accidental fire in a warehouse, without any fault or negligence of the defendants, they would still he liable if they had expressly agreed to insure against fire &c., as is alleged. But if it was error to give those instructions, without such qualification, it is not to the prejudice of the plaintiffs in error; and the defendant in error, who only • could he prejudiced by them, does not complain. We are therefore of opinion that there is no error in the judgment of the Circuit court, for which it should he reversed.
Judgment affirmed.